UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WENDY PATRICE WYNTER,

                           Plaintiff,               **COMPLAINT**

             -against-

                                       Civ. Action No.: 16-4089

HAVEN MANOR HEALTH CARE
CENTER, LLC d/b/a HAVEN           **JURY TRIAL DEMANDED**
MANOR HEALTH CARE CENTER,
ARON CYTRYN, and NANCY
BARELLO,

                       Defendants.
-------------------------------------------------------------X

     WENDY PATRICE WYNTER ("plaintiff"), by her attorneys, Weinstein, Kaplan & Cohen, P.C., complaining of HAVEN MANOR HEALTH CARE CENTER, LLC d/b/a HAVEN MANOR HEALTH CARE CENTER ("HAVEN MANOR"), ARON CYTRYN ("CYTRYN"), and NANCY BARELLO ("BARELLO") (hereinafter collectively referred to as "defendants"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e *et. seq.*, 42 U.S.C. §1981, and the Fourteenth Amendment of the Constitution of the United States.

2.     This Court has subject matter jurisdiction over this matter under the foregoing, and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3.     Venue is properly laid in the Eastern District of New York pursuant to 28

U.S.C. §1391(b) as the Eastern District of New York is the district where a substantial

part of the events giving rise to the claim occurred.

## CONDITIONS PRECEDENT TO SUIT

4.     Plaintiff has complied with all the prerequisites to an action under Title VII:

    (a)     On or about January 23, 2015, plaintiff timely filed a charge

        for the discrimination alleged in this Complaint with the

        Equal Employment Opportunity Commission ("EEOC");

    (b)     On or about April 25, 2016, the EEOC notified plaintiff of the

        termination of any further processing of the charge of

        employment discrimination and gave the plaintiff a Right-To-

        Sue Notice, permitting plaintiff to institute this action within

        90 days of the receipt thereof; and

    (c)     Plaintiff files this action within ninety (90) days of receipt of

        the aforementioned Right-To-Sue Notice.

## THE PARTIES

5.     Plaintiff was, at all relevant times, an adult individual residing in East

Meadow, County of Nassau, in the State of New York.

6.     Upon information and belief, defendant-HAVEN MANOR is a domestic

Limited Liability Company, organized and existing under the laws of the State of New

2

York, with a principal place of business at 1441 Gateway Boulevard, Far Rockaway, New York 11691 that has more than fifteen (15) employees.

7.       At all relevant times, upon information and belief, defendant-HAVEN MANOR is an enterprise engaged in the business of providing health care, nursing home, and assisted living services.

8.       Upon information and belief, defendant-CYTRYN serves as Administrator for defendant-HAVEN MANOR.

9.       Upon information and belief, defendant-CYTRYN resides at 2317 Olean Street, Brooklyn, New York 11210.

10.       Upon information and belief, defendant-BARELLO serves as Assistant Administrator for defendant-HAVEN MANOR.

11.       Upon information and belief, defendant-BARELLO has a principal place of business located at 1441 Gateway Boulevard, Far Rockaway, New York 11691.

12.       Upon information and belief, defendants are "employers" under Section 8-102 of the New York City Human Rights Law, Section 292 of the New York State Human Rights Law, and Title VII, 42 U.S.C. §2000e(b), and the regulations promulgated thereunder.

## STATEMENT OF FACTS

13.       At all relevant times, defendants employed plaintiff as a Registered Nurse, Nursing Supervisor, Assistant Director of Nursing and/or Director of Nursing from April,

3

2010 until in or about September 2014.

14.     Almost immediately after being hired by defendants, plaintiff was subjected to pervasive and unwanted sexual advances, inappropriate sexual comments, and unwelcome physical contact by defendant-CYTRYN.

15.     More particularly, defendant-CYTRYN frequently touched or attempted to touch plaintiff's breasts, buttocks, pelvis, face, shoulders and back.

16.     Plaintiff complained about the unwelcome sexual contact to Florenda Pedrom ("Pedrom"), who was the Director of Nursing when plaintiff was hired.

17.     Pedrom advised plaintiff "not to scream sexual harassment" because defendant-CYTRYN does it all the time and had even done it to her.

18.     Pedrom also advised plaintiff that it was useless to complain because there really was no one to complaint to as defendant-BARELLO was, herself, romantically involved with defendant-CYTRYN.

19.     After Ms. Pedrom left, plaintiff was promoted to Director of Nursing.

20.     After plaintiff was promoted to Director of Nursing, the only two individuals who were superior to her position was defendants-CYTRYN and BARELLO.

21.     Throughout her several years of employment by the defendants, plaintiff continued to be subjected to pervasive and unwanted sexual advances, inappropriate sexual comments, unwelcome physical contact at the hand of defendant-CYTRYN at various locations on the employers' premises.

22.     On one such occasion, plaintiff had asked defendants for a raise.

23.     Defendant-CYTRYN'S office is locked from the outside.

24.     Someone from the inside of defendant-CYTRYN'S office must buzz in anyone coming into the office.

25.     Upon information and belief, there is a camera posted outside defendant-CYTRYN'S office and a screen inside the office so that defendant-CYTRYN can see who is attempting entry into his office before he buzzes them in.

26.     Defendant-CYTRYN'S office has two levels, a main office level and a downstairs.

27.     The downstairs portion of defendant-CYTRYN'S office is set up like a bedroom.

28.     Shortly after plaintiff asked defendants for a raise, defendant-CYTRYN had plaintiff paged to come to his office.

29.     After plaintiff was buzzed into defendant-CYTRYN'S office, he asked her to come downstairs with him for a minute.

30.     When plaintiff arrived downstairs, defendant-CYTRYN asked her if she wanted to have a "little fun."

31.     Defendant-CYTRYN then tried to touch plaintiff's breasts and face.

32.     Plaintiff told defendant-CYTRYN that his behavior was inappropriate and asked him to please stop.

33.     Defendant-CYTRYN then unbuttoned his pants, dropped his pants and underwear down to his ankles, exposing his penis to plaintiff and leaving only a rope dangling from his waist that plaintiff believes had something to do with his Jewish faith.

34.     Defendant-CYTRYN then advised plaintiff that she would have to do him a favor if she wanted him to do her a favor, referring to the raise she had asked for.

35.     Plaintiff was horrified by this sight and told defendant-CYTRYN that she was leaving.

36.     Defendant-CYTRYN told plaintiff not to worry because no one was coming.

37.     Defendant-CYTRYN pleaded with plaintiff to just stay for five minutes.

38.     Defendant-CYTRYN asked plaintiff to give him a "hand job"

39.     Plaintiff began to leave and defendant started after her, fumbling over his shoe as his pants were still around his ankles.

40.     Plaintiff left defendant-CYTRYN'S office.

41.     Plaintiff thereafter attempted to avoid defendant-CYTRYN as often as possible.

42.     Defendant-CYTRYN would stop trying to touch her inappropriately and/or propositioning her for a few months, and he would then start up again.

43.     Defendant-CYTRYN would purposely attempt to grope plaintiff in places where he knew the security cameras would not likely pick up his inappropriate conduct,

6

such as in the copy room.

44.     Plaintiff also tried to avoid going into defendant-CYTRYN'S office.

45.     When plaintiff rebuked defendant's-CYTRYN'S advances, he would ask her what was wrong with her, if she was a lesbian, if she was a virgin and/or he called her a "defiant bitch."

46.     Plaintiff estimates that defendant-CYTRYN touched her inappropriately and/or made unwelcome, sexually charged comments to her approximately three times a week and had exposed his genitals to her on several occasions while asking her to touch him.

47.     After a while of refusing his advances, plaintiff began to feel that defendant-CYTRYN was going to terminate her because she would not engage in sexual acts with him.

48.     Plaintiff delayed in commencing litigation as she is a single mother and she feared that defendant-CYTRYN would file a false complaint with New York State and possibly jeopardize her Nursing License and, thus, her livelihood if she complained before she obtained other employment.

49.     While plaintiff had no one in management to complaint to, plaintiff did speak with other employees about defendant-CYTRYN'S inappropriate behavior only to learn that defendant-CYTRYN had or was currently sexually harassing other employees, too.

7

50.     Upon information and belief, defendant-CYTRYN had engaged in unwelcome sexual contact and made inappropriate, sexually charged comments directed towards Sherry, a Recreation Director, and her twenty-one year old daughter, who worked at HAVEN MANOR as a Recreation/Smoking Aide.

51.     Sherry advised plaintiff that she was very verbal to defendant-CYTRYN and told him to leave her and her daughter alone.

52.     Defendant-CYTRYN engaged in unwelcome sexual contact and made inappropriate, sexually charged comments directed towards Maureen Crawford, a Registered Nurse at HAVEN MANOR.

53.     More particularly, Ms. Crawford came to plaintiff crying shortly after she started working there advising plaintiff that defendant-CYTRYN had attempted to engage in sexual contact with her in his office.

54.     Defendant-CYTRYN engaged in unwelcome sexual contact and made inappropriate, sexually charged comments directed towards Arlette Suduko, a Registered Nurse.

55.     Upon information and belief, defendant-CYTRYN engaged in unwelcome sexual contact and made inappropriate, sexually charged comments directed towards a former employee named Rasheeda.

56.     As noted above, defendant-CYTRYN engaged in unwelcome sexual contact and made inappropriate, sexually charged comments directed towards Florenda Pedrom.

8

57.     In the four years she worked for defendants, plaintiff never received notice of one single negative evaluation and was never written up once.

58.     Despite the foregoing, shortly after plaintiff complained to Patricia Hamlin, Administrative Assistant to defendants-CYTRYN and BARELLO, about defendant-CYTRYN'S inappropriate sexual conduct, defendants began taking adverse employment actions against her.

59.     After complaining to Ms. Hamlin about defendant-CYTRYN'S inappropriate conduct, defendant-BARELLO, defendant-CYTRYN and/or Marvin Russo approached plaintiff to advise that she was in jeopardy of losing her job as defendant-CYTRYN felt that she was a "defiant bitch".

60.     After complaining to Ms. Hamlin about defendant-CYTRYN'S inappropriate conduct, defendant-BARELLO, defendant-CYTRYN and/or Marvin Russo approached plaintiff to ask whether she wanted to remain employed by defendants.

61.     On May 8, 2014, defendant-BARELLO and Marvin Russo met with plaintiff to advise that defendant-CYTRYN wanted to fire her and asked whether she was willing to do whatever it took to keep her job.

62.     As plaintiff was in fear that she would lose her job and/or that defendants would file a false claim with the State to detrimentally affect her Nursing License that she relied upon to support herself and her minor son, plaintiff advised defendant-BARELLO and Marvin Russo during this meeting that she would do whatever it took to keep her job.

63.     Plaintiff thereafter immediately began looking for employment as she feared this meant increased advances by defendant-CYTRYN and began avoiding any contact with defendant-CYTRYN.

64.     Plaintiff obtained other employment shortly thereafter and quit her job with defendants.

65.     Upon information and belief, defendant-CYTRYN is aware that his behavior is inappropriate as he has been the subject of prior sexual harassment complaints and/or claims made by other current and former employees.

66.     Upon information and belief, defendants-HAVEN MANOR and BARELLO knew or should have known about defendant-CYTRYN'S inappropriate sexual conduct as a result of the prior and current complaints and/or claims about such conduct.

67.     Despite said knowledge, defendants-HAVEN MANOR and BARELLO did nothing to stop and/or prevent such conduct from occurring.

68.     Due to the aforesaid consistent and pervasive sexual harassment, plaintiff's work environment became permeated with hostility and discomfort.

69.     As a result thereof, plaintiff's work performance suffered because she was forced to spend time worrying about her next encounter with defendant-CYTRYN and being subjected to more of his unwanted sexual advances and harassment.

70.     During her work shifts, plaintiff actively tried to avoid defendant-CYTRYN, which caused constant distraction and created an environment of severe

emotional distress.

71.     The physical and emotional impact was so severe that plaintiff was forced to see professional help in order to attempt to cope with the indelible consequences of the sexual harassment she endured while under defendants' employ.

72.     This proceeding is being brought to remedy the foregoing discrimination based upon plaintiff's sex in the terms and conditions of her employment and retaliation for opposition to unlawful employment practices.

### FIRST CAUSE OF ACTION
### *Sex Discrimination and Harassment under Title VII*

73.     Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "72", inclusive, with the same force and effect as though each were fully set forth herein at length.

74.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring her complaints of discrimination, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

75.     The aforementioned remarks were made intentionally, wantonly and maliciously by defendant-CYTRYN.

76.     Defendants-HAVEN MANOR and BARELLO knew or should have known about defendant-CYTRYN'S inappropriate sexual conduct towards plaintiff and other employees, but did nothing about the inappropriate, sexual conduct.

77.     Plaintiff was regularly and wrongfully harassed about her job performance, her personal life, her sexual orientation and other matters outside her control after complaining about defendant-CYTRYN'S inappropriate sexual conduct.

78.     The foregoing abusive conduct was done so at the direction of defendant-CYTRYN with the hopes that it would force plaintiff to succumb to his unwanted sexual advances.

79.     Defendants-BARELLO and HAVEN MANOR completely disregarded plaintiff's efforts to stop such conduct and said defendants failed to take any appropriate or sufficient steps to prevent such conduct from occurring in the future.

80.     Defendants also retaliated against plaintiff for her complaints about defendant's-CYTRYN'S inappropriate sexual conduct by interrogating plaintiff about whether she was a team player willing to do whatever it takes to keep her job.

81.     The foregoing retaliation was tantamount to constructive termination as the implication was that plaintiff would be terminated if she did not succumb to defendant's-CYTRYN'S unwelcome and inappropriate sexual conduct.

82.     As a result of these incidents, plaintiff has suffered personal injury, including but not limited to fear, anxiety and stress.

83.     As a result of defendants' willful, intentional and malicious discriminatory acts, plaintiff is now suffering and will continue to suffer irreparable injury, as well as monetary and economic damages, and damages for mental anguish and humiliation as a

result thereof.

84.     By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### *Sex Discrimination and Harassment under*
### *New York State Human Rights Law*

85.     Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "84," inclusive, with the same force and effect as though each were fully set forth herein at length.

86.     Defendants have discriminated against and harassed plaintiff as a result of her sex in violation of New York State Human Rights Law.

87.     Defendants have discriminated against plaintiff on the basis of her sex by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment that included, among other things, severe and pervasive harassment of plaintiff.

88.     Defendant-BARELLO is liable under the New York State Human Rights Law as an aider and abettor of the discrimination against plaintiff.

89.     Defendant-BARELLO knowingly and/or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation against plaintiff in violation of the New York State Human Rights Law.

90.     By the acts and practices described above, including but not limited to

creating a hostile work environment for plaintiff because of her sex and ignoring her complaints of discrimination, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the New York State Human Rights Law.

91.     Defendants have retaliated against plaintiff in violation of the New York State Human Rights Law as a result of her opposition to the discriminatory practices directed towards herself and other females employed by defendants.

92.     As a result of defendants' willful, intentional and malicious discriminatory acts, plaintiff is now suffering and will continue to suffer irreparable injury, as well as monetary and economic damages, and damages for mental anguish and humiliation as a result thereof.

93.     By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### Sex Discrimination and Harassment under
### New York City Human Rights Law

94.     Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "93," inclusive, with the same force and effect as though each were fully set forth herein at length.

95.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex and ignoring her

14

complaints of discrimination, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the New York State Human Rights Law.

96.    Defendant-BARELLO is liable under the New York City Administrative Code as an aider and abettor of the discrimination against plaintiff.

97.    Defendant-BARELLO knowingly and/or recklessly aided and abetted the unlawful employment practices, discrimination and retaliation against plaintiff in violation of the New York City Administrative Code.

98.    Defendants have retaliated against plaintiff in violation of the New York City Human Rights Law as a result of her opposition to the discriminatory practices directed towards herself and other females employed by defendants.

99.    As a result of defendants' willful, intentional and malicious discriminatory acts, plaintiff is now suffering and will continue to suffer irreparable injury, as well as monetary and economic damages, and damages for mental anguish and humiliation as a result thereof.

100.    Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of the New York City Human Rights Law for which plaintiff is entitled to an award of punitive damages.

101.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### *Hostile Work Environment*

102.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "101," inclusive, with the same force and effect as though each were fully set forth herein at length.

103.    By the acts and practices described above, defendants' actions and the results arising therefrom served to create and did create a hostile work environment.

104.    As a result of defendants' actions, plaintiff's workplace was permeated with discriminatory intimidation so severe and pervasive that it altered the conditions of plaintiff's work environment.

105.    As a result of defendants' willful, intentional and malicious discriminatory acts, plaintiff is now suffering and will continue to suffer irreparable injury, as well as monetary and economic damages, and damages for mental anguish and humiliation as a result thereof.

106.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### *Attorneys' Fees under Title VII*

107.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "106," inclusive, with the same force and effect as though each were fully set forth herein at length.

16

108.    Pursuant to 42 U.S.C. 2000e-5(k), plaintiff is entitled to an award of reasonable attorneys' fees should she prevail in the instant action.

109.    As a result of defendants' willful, intentional, and malicious discriminatory acts, plaintiff was constrained to file the instant action and has, and will continue to, incur attorneys' fees.

110.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial as and for attorneys' fees.

### SIXTH CAUSE OF ACTION
*Attorneys' Fees under*
*New York State Human Rights Law*

111.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "110," inclusive, with the same force and effect as though each were fully set forth herein at length.

112.    Pursuant to Section 297 of the New York State Human Rights Law, plaintiff is entitled to an award of reasonable attorneys' fees should she prevail in the instant action.

113.    As a result of defendants' willful, intentional, and malicious discriminatory acts, plaintiff was constrained to file the instant action and has, and will continue to, incur attorneys' fees.

114.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial as and for attorneys' fees.

17

## SEVENTH CAUSE OF ACTION
### *Attorneys' Fees under*
### *New York City Human Rights Law*

115.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "114," inclusive, with the same force and effect as though each were fully set forth herein at length.

116.    Pursuant to Section 8-502 of the New York City Human Rights Law, plaintiff is entitled to an award of reasonable attorneys' fees should she prevail in the instant action.

117.    As a result of defendants' willful, intentional, and malicious discriminatory acts, plaintiff was constrained to file the instant action and has, and will continue to, incur attorneys' fees.

118.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial as and for attorneys' fees.

## EIGHTH CAUSE OF ACTION
### *Intentional Infliction of Emotional Distress*

119.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "118," inclusive, with the same force and effect as though each were fully set forth herein at length.

120.    The acts and practices described above, perpetrated by defendants, were extreme and outrageous and rose to a level that goes beyond all bounds of decency in a civilized society.

121.    Defendants intentionally, wilfully, and recklessly engaged in, permitted, aided or abetted said sex discrimination and harassment described above, thereby causing plaintiff to suffer distress rising to a level that no reasonable person could be expected to endure.

122.    As a result of defendants' willful, intentional and malicious discriminatory acts, plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, and damages for mental anguish and humiliation as a result thereof.

123.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
#### *Battery*

124.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "123," inclusive, with the same force and effect as though each were fully set forth herein at length.

125.    Defendant-CYTRYN intentionally and wilfully touched plaintiff's breasts, buttocks, pelvis, face, shoulders and back on multiple occasions, without her permission.

126.    Defendant's-CYTRYN'S act of touching plaintiff's breasts, buttocks, pelvis, face, shoulders and back constitutes unwanted physical contact.

127.    Defendant's-CYTRYN'S act of touching plaintiff's breasts, buttocks, pelvis, face, shoulders and back constitutes offensive physical contact.

128.    Defendant's-CYTRYN'S act of touching plaintiff's breasts, buttocks,

pelvis, face, shoulders and back constitutes harmful physical contact.

129.    Defendant's-CYTRYN'S act of touching plaintiff's breasts, buttocks, pelvis, face, shoulders and back was not consensual contact.

130.    Said repeated touching was harmful, and affected plaintiff's ability to perform at work and forced her to seek professional help to cope.

131.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### *Assault*

132.    Plaintiff repeats, reiterates, and realleges each and every allegation in paragraphs "1" through "131," inclusive, with the same force and effect as though each were fully set forth herein at length.

133.    Defendant-CYTRYN intentionally and wilfully touched plaintiff's breasts, buttocks, pelvis, face, shoulders and back on multiple occasions, without her permission.

134.    Said repeated attempts caused plaintiff to reasonably apprehend imminent harmful and offensive physical contact, and affected plaintiff's ability to perform at work and forced her to seek professional help to cope.

135.    By reason of the foregoing, plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this Court grant the following

relief:

a.   A declaratory judgment that all of the practices complained of herein are willful and violate the laws of the United States, as well as the State and City of New York;

b.   An award of damages in an amount to be determined at trial to compensate plaintiff for all monetary and/or economic harm;

c.   An award of damages in an amount to be determined at trial to compensate plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

d.   An award of damages in an amount to be determined at trial to compensate plaintiff for all non-monetary and/or compensatory harm, including, but not limited to: (i) mental anguish; (ii) humiliation; (iii) stress and anxiety; (iv) emotional pain and suffering; (v) emotional distress; and (vi) physical harm resulting therefrom;

e.   An award of punitive damages in an amount to be determined at trial;

f.   An award of prejudgment and post-judgment interest;

g.   An award of all costs and expenses of this action, together with reasonable attorneys' and expert fees to the fullest extend permitted by law; and

h.   Any other and further relief that this Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, a trial by jury in this action.

Dated:   Garden City, New York
            July 22, 2016

                                          Yours, etc.

                                          WEINSTEIN, KAPLAN & COHEN, P.C.
                                          *Attorneys for Plaintiff*

                                          By: _____
                                                DANIELE D. DE VOE (DD0777)
                                          1325 Franklin Avenue
                                          Suite 210
                                          Garden City, New York 11530
                                          (516) 877-2525